*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. A. TOKARSKI, Minor.

UNPUBLISHED
November 9, 2021

No. 357140
Saginaw Circuit Court
Family Division
LC No. 20-049069-NA

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, LAT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent).[1] On appeal, respondent argues that the trial court erred by finding statutory grounds for termination and that termination was in LAT's best interests. We affirm.

## I. BACKGROUND

This case arises out of a petition filed by the Department of Health and Human Services (DHHS) requesting that LAT be removed from respondent's care. The petition alleged that respondent had a 15-year history of substance abuse, including a "4[-]day heroin/crack bender during which time" LAT was with her. The petition also alleged that LAT had cigarette burns on her body and was "extremely behind on immunizations" because she had only been to two wellness visits, and that respondent was homeless. Respondent admitted to the allegations and the trial court took jurisdiction over LAT.

Respondent's case was delayed because of the COVID-19 pandemic and the associated closings of the trial court and other services. During the initial dispositional hearing in June 2020, a case service plan was adopted that required respondent to participate in a psychological evaluation, substance abuse treatment, random drug testing, parent education, and housing

---

[1] During the proceedings, the trial court also terminated the parental rights of LAT's father. He has not appealed.

assistance. Although the case service plan had just been adopted, it was noted that respondent had three positive drug screens in March 2020, and another positive drug screen in June. Respondent partially completed a psychological evaluation at Saginaw Psychological. During the evaluation, respondent disclosed her history of substance abuse and treatment.

Respondent continued to have positive drug screens in June and July 2020. Respondent served time in jail from September 2020 through December 2020. While she was in jail, no service providers were permitted to enter the jail due to the pandemic. Therefore, respondent was not able to participate in parenting classes or substance abuse treatment, although she was able to meet with a community mental health caseworker. Once released from jail, respondent intended to attend Odyssey House for inpatient care. However, respondent did not attend Odyssey House immediately upon her release from jail as she indicated that she intended to do, and as her personal recognizance bond required. Accordingly, the DHHS filed a supplemental petition to terminate respondent's parental rights.

At the termination hearing, respondent's caseworker testified that although respondent was able to remain sober while she was in a controlled environment, such as inpatient treatment or jail, respondent was unable to maintain sobriety outside of these environments. Testimony about respondent's drug screens supported the caseworker's testimony. Indeed, respondent relapsed after her release from jail, four days before entering treatment at Odyssey House. Respondent's counselor at Odyssey House testified that respondent recently entered level two of the four-level program and estimated that respondent would complete the program in approximately 10 months.

The referee found that the conditions that led to adjudication, namely respondent's substance abuse, continued to exist. Respondent had a significant history of substance abuse and had numerous positive tests. Although respondent was currently participating in Odyssey House, she was only two months into the 12- to 15-month program. And if she did not complete the program, she faced an additional nine months in jail. Further, respondent had a history of maintaining sobriety while participating in treatment and then relapsing once she left treatment. As LAT was almost two years old, she needed stability and permanency that respondent could not provide given her projected timeline with Odyssey House. Therefore, the referee concluded that termination was appropriate under MCL 712A.19b(3)(c)(*i*).

The referee also concluded that termination was appropriate under MCL 712A.19b(3)(g) because respondent had the capacity to financially provide for LAT, but failed to do so. Respondent was able to work, but did not. She was homeless and had not provided for LAT's needs in over a year.

Termination was also appropriate under MCL 712A.19b(3)(j) because respondent had a history of prioritizing her drug use over LAT's needs. Respondent was still participating in substance-abuse treatment, but she had still not benefited from such treatment.

The referee next determined that termination of respondent's parental rights was in LAT's best interest. Despite the strong bond that had existed between respondent and LAT in the past, that bond eroded when respondent used drugs. During parenting time visits, respondent demonstrated minimal parenting skills. And LAT needed stability and permanency, which respondent could not provide. More specifically, respondent still had at least 10 months of

treatment ahead of her at Odyssey House, assuming that she did not leave the program, at which point she would face time in jail. Moreover, respondent's history of relapsing outside of treatment further indicated a lack of stability. The trial court adopted the referee's findings of fact and conclusions of law and entered an order terminating respondent's parental rights to LAT. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondent also argues that she was not provided reasonable services or a reasonable amount of time to benefit from the services. We disagree.

Although the issue of whether the statutory grounds for termination existed is preserved for appeal, see MCR 2.517(A)(7); *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014), respondent failed to preserve the issue involving the reasonableness of her services. A respondent must object or otherwise indicate that the services provided are somehow inadequate in order to preserve such a claim. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012).

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted). Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a respondent's parental rights if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." "This statutory ground exists when the conditions that brought the [child] into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *In re White*, 303 Mich App at 710 (quotation marks and citation omitted).

In this case, the initial disposition order was entered on June 22, 2020, and respondent's parental rights were terminated on April 8, 2021. Therefore, more than 182 days had elapsed since the initial disposition order was entered. The conditions that led to adjudication were respondent's history of substance abuse, her failure to provide LAT with proper medical care, her homelessness, and her allowing LAT to be harmed while in her father's care. The trial court focused on respondent's history of substance abuse in determining that termination was warranted under MCL 712A.19b(3)(c)(*i*).

Respondent's substance abuse continued to exist at the time of termination. The DHHS offered various services to assist respondent in overcoming her substance abuse, including referrals to Holy Cross Services, Saginaw Psychological, Odyssey House, and Victory Clinical Services. Respondent's caseworker testified that respondent had not benefited from any of the substance-abuse services. Respondent left Saginaw Psychological after approximately a month without completing the program, apparently saying that "she did not like it there." However, respondent testified that she left because of a bedbug problem. Respondent participated in Victory Clinical Services for an extended time before being discharged because she was in jail. Additionally, all eight of respondent's drug screens while engaged with Victory Clinical Services were positive for cocaine, benzodiazepines, and amphetamines. A condition of respondent's release from jail in December 2020, was that she enter treatment. Admittedly there was a mix-up and respondent was not able to enter Odyssey House until January 2021.

Respondent admitted that she relapsed four days before entering treatment at Odyssey House and tested positive for cocaine, amphetamines, and benzodiazepines. At the time of termination, respondent had been at Odyssey House for approximately two months and she was still in the early stages of the program. Successfully completing the program at Odyssey House typically takes from 12 to 18 months. The caseworker acknowledged that respondent was "doing well currently" at Odyssey House, "but she has not been [there] long enough to the point of showing any true benefit." Indeed, the caseworker recognized that while respondent could be forced into sobriety while in treatment, she had a pattern of returning to use drugs after treatment. Respondent's counselor at Odyssey House testified that respondent was doing well in the program and that she participated in therapy to address her trauma and the triggers of her substance abuse. The counselor estimated that respondent would need about 10 additional months to complete the program. Given the above testimony, the trial court did not clearly err by determining that respondent's substance-abuse problems continued to exist and that there was not a reasonable likelihood that her substance abuse would be rectified in a reasonable time. Indeed, the best-case scenario is that respondent would complete the program at Odyssey House in 10 months.

Respondent argues that she should have been given more time to address her substance-abuse issue, particularly because COVID-19 impacted her ability to engage in services. COVID-19 impacted the DHHS's ability to offer drug screens, but respondent continued to test positive for substances with Victory Clinical Services during the pandemic and before entering Odyssey House. Further, respondent testified that she was not honest with her case manager at Victory Clinical Services about her substance abuse, which had a negative impact on her recovery. Additionally, although respondent worked with a community mental health therapist about her substance abuse when she was incarcerated, she did not benefit from the service because she relapsed four days before entering the Odyssey House. Overall, respondent was offered services during the pandemic but failed to benefit from the services because she continued to demonstrate that she could not remain sober after being in a controlled environment such as inpatient treatment or jail.

Respondent further argues that the trial court failed to inquire whether she was disabled and needed specialized services. The DHHS has a duty under the Americans with Disabilities Act, 42 USC 12101 *et seq.*, to provide services that reasonably accommodate a respondent's disability. *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Respondent's argument rests on the assumption that she had a disability, but does not provide any support as to what it is, let alone

how the services should have been tailored to address it. The DHHS "cannot accommodate a disability of which it is unaware." *Id*. at 87.

To the extent that respondent argues that the psychological services were insufficient to establish a disability, this argument too fails. Respondent testified that she completed a psychiatric examination. According to the results of respondent's psychological evaluation, respondent had short-term memory issues, but because respondent did not complete the intellectual testing portion of the evaluation, it was unclear what caused her memory issues. Therefore, it was recommended that respondent complete a neurological examination to "determine [the] extent of possible brain damage from substance abuse as well as domestic violence and other trauma." Although respondent may have had short-term memory issues, there was no evidence that respondent did not understand she was expected to live a substance-free lifestyle. Therefore, respondent has failed to show that she would have fared better had she completed a neurological examination. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005) (stating that to successfully claim a lack of reasonable efforts, a respondent must establish that he or she would have fared better if petitioner offered other services).

Accordingly, we are not left with a definite and firm conviction that a mistake has been made with respect to the trial court's determination that termination was proper under MCL 712A.19b(3)(c)(*i*).[2] See *In re Schadler*, 315 Mich App at 408.

### III. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in LAT's best interests. We disagree.

We review the trial court's determination that termination is in a child's best interests for clear error. *In re Schadler*, 315 Mich App at 408. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the trial court places its "focus on the child rather than the parent." *Id*. at 411. "[T]he court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case

---

[2] Because only one statutory ground is required to terminate a respondent's parental rights, we need not address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(g) and (j). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). Regardless, after review of the record, we conclude that the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(g) and (j).

service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, respondent challenges the trial court's finding that termination was appropriate because LAT should not have to wait while respondent completed the program at Odyssey House. Although respondent was on the wait list for Odyssey House for much of the case, respondent participated in other treatment programs but failed to benefit because she had a history of not being able to stay sober outside of a controlled environment. Further, although respondent argues that LAT should have been placed with her while she completed the program at Odyssey House, as the caseworker testified, respondent needed to focus on her treatment without the additional responsibility of having to care for LAT. Although respondent argues that it would not have harmed LAT to allow respondent the time to complete her treatment at Odyssey House, respondent still had at least 10 months left in her treatment, if not more. LAT had already been removed from respondent's care for 14 months, which was nearly two-thirds of her life. LAT needed stability and permanency that respondent was not able to provide. We discern no clear error in the trial court's findings or determination that termination of respondent's parental rights was in LAT's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica